**EVERGREEN MARINE CORPORATION,**
Plaintiff,

v.

**WELGROW INTERNATIONAL INC., Defendant.**

No. 93 Civ. 6940 (RWS).

United States District Court, S.D. New York.

Oct. 22, 1996.

Cichanowicz, Callan & Keane, New York City, for Plaintiff; Deborah R. Reid, Joseph F. DeMay, Jr., of counsel.

Anthony Y. Cheh, New York City, for Defendant.

## OPINION

SWEET, District Judge.

In this action to recover damages for alleged non-payment of detention charges under a service contract and bills of lading, Plaintiff Evergreen Marine Corporation ("Evergreen") has moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. Defendant Welgrow International, Inc. ("Welgrow") has cross-moved to dismiss on the following grounds: insufficient service of process, pursuant to Rule 12(b)(5) and Rule 4; failure to join an indispensable party, pursuant to Rule 12(b)(7) and Rule 19(b); and the pendency of an action in Antwerp, Belgium presenting the same claims and issues. Both parties have made motions to strike matters in declarations and affidavits submitted in relation to the motions to dismiss and for summary judgment.

For the reasons set forth below, Plaintiff's motion will be denied, and Defendant's cross motions also will be denied. The motions to strike will be summarily denied.

### The Parties

Evergreen is an ocean common carrier incorporated under the laws of Taiwan, with its principal place of business in Taiwan.

Welgrow is a domestic corporation with its principal place of business in New York.

**204**

### Facts [1] and Procedural Background

█ On June 5, 1992, Evergreen and Welgrow entered into a Service Contract (the "Contract"), by which Evergreen agreed to transport a minimum quantity of goods shipped by Welgrow over a fixed period of time at an agreed upon rate that was lower than the tariff freight rate Evergreen charges to other, non-contract, shippers. It is customary for carriers to charge shippers for delays in returning cargo containers to the carrier within a specified time after the goods are tendered to the consignee designated to receive the shipped goods in another port. Such "detention charges" are included when a non-contract shipper engages a carrier under the carrier's standard tariff. The Contract does not, on its face, specify a rate for detention charges. However, it does specify the "free time"—the time period after the carrier delivers the containers before detention charges begin to accrue—for containers bound for different ports. It also provides that the carriage of goods would be subject to Evergreen's standard bill of lading, which refers to detention charges, but does not specify a rate.

In this case, the consignee of the shipments was a Belgian company, Grisar & Velge, N.V. ("Grisar"). The Contract contemplated the transportation of goods from U.S. ports to Belgium, where Grisar would take the goods and ship them, in Evergreen's containers, to ports in Eastern Europe.

The Contract contained the following integration clause:

This Contract constitutes the entire agreement between the parties. FMC Regulations ... prohibit modification of the essential terms of this Contract during its duration. Any modification to non-essential terms may only be made by written agreement signed by both parties.

As required by 46 CFR § 514.7, the essential terms of the Contract were filed with the Federal Maritime Commission ("FMC"). On or about November 9, 1992, the Contract was amended to: (1) extend the amount of time to return containers to Evergreen; and (2) reduce the detention charge rate. The Contract amendment was also filed with the FMC, as required by 46 CFR §§ 514.7 and 514.17. The amended Contract specifies the amount of detention charges directly and by reference to Tariff FMC 155, which Evergreen has on file with the Federal Maritime Commission.

Construing the facts in the light most favorable to Welgrow, Evergreen, Welgrow and Grisar agreed that Grisar would pay the detention charges incurred under the shipping arrangements among Evergreen, Welgrow and Grisar. It is unclear when this agreement was reached.

Pursuant to the Contract and bills of lading issued to Welgrow, Evergreen transported shipments from various U.S. ports to Antwerp. Detention charges were incurred as a result of delays in the return of Evergreen's cargo containers. Both Grisar and Welgrow made payments to Evergreen for detention charges during the time the Contract was in force. Grisar reimbursed Welgrow for detention charges Welgrow paid. Grisar acknowledged to Evergreen, in a number of written communications, its continuing obligation to return containers in a timely manner. Grisar, in explaining that it was withholding payment of certain invoices for detention charges, also communicated its

---

1. The facts as set forth below are limited to the decision of these motions. In deciding a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir. 1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983). The facts relevant to the summary judgment motion as presented here are construed accordingly.

In considering the motion to dismiss, the facts are construed in the light most favorable to the plaintiff. *Thompson v. Kerr*, 555 F.Supp. 1090, 1093 (S.D.Ohio 1982) (on motion to dismiss for defective service of process, court construed facts in complaint and record in light favorable to plaintiff); *Shell Oil Co. v. Aetna Casualty & Surety Co.*, 158 F.R.D. 395, 399 (N.D.Ill.1994) (on motion to dismiss for failure to join indispensable party, facts are construed in plaintiff's favor).

future intention to pay charges when errors in the invoices were corrected.

On March 12, 1993, after it had satisfied its minimum volume commitment, Evergreen terminated the Contract. At that time, outstanding detention charges were due under the Contract and bills of lading. Evergreen issued invoices for detention charges to Grisar.

On April 27, 1993, Evergreen commenced an action for unpaid detention charges against Grisar in the Commercial Court located in Antwerp, Belgium (the "Antwerp Court" or "Antwerp Tribunal"). On August 12, 1993, Evergreen commenced a second action for additional unpaid detention charges against Grisar in the Antwerp Court.

Evergreen filed the complaint in this action on October 5, 1993. On October 13, 1993, Arthur Burke ("Burke") served process upon Jerry Crow ("Crow"), a clerical employee of Welgrow. Burke entered Welgrow's corporate offices, spoke with Crow and inquired whether he was authorized to receive legal documents for Welgrow. When Crow responded affirmatively, Burke left the papers with Crow. Welgrow filed its answer on November 2, 1993.

On November 15, 1995, Grisar impleaded Welgrow in the pending actions in Antwerp, seeking indemnification. Welgrow has not yet answered the cross-claim in Antwerp and has not indicated that it will submit to the jurisdiction of the Antwerp tribunal.

On December 8, 1995, Evergreen made the instant motion for summary judgment. On August 20, 1996, Welgrow made this cross-motion to dismiss. On October 2, 1996, oral argument was heard, and the matter was deemed fully submitted.

*Discussion*

## I. *The Motion to Dismiss*

### A. *Improper Service of Summons*

Welgrow contends that service of process was defective pursuant to Rule 4 of the Federal Rules of Civil Procedure. Rule 4(h)(1) provides that service upon a corporation may be made "in the manner prescribed for individuals by subdivision (e)(1)...." Rule 4(e)(1), in turn, provides that service may be

made "pursuant to the law of the state in which the district court is located, or in which service is effected...."

Section 311(1) of the New York Civil Practice Law and Rules provides that personal service may be effected by delivery of the documents to "an agent authorized by appointment to receive process."

Evergreen served the summons and complaint upon Crow, a Welgrow employee who represented that he was authorized to accept legal papers for Welgrow. Welgrow contends that service was defective because the clerical staff person served was not, in fact, "authorized" by Welgrow to receive service.

■ However, it is well settled in New York that a process server is entitled to rely upon the representations of an employee who claims to be authorized to receive service of process. *Fashion Page Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272–73, 406 N.E.2d 747, 428 N.Y.S.2d 890 (1980) (service adequate when made upon vice-president's secretary, who claimed to be authorized to accept service); *Kuhlik v. Atlantic Corp.*, 112 F.R.D. 146, 149 (S.D.N.Y.1986) (service adequate where process server reasonably relied upon employee's representation that she was authorized to receive process).

■ In this case, the process server reasonably relied on Crow's representation that he was authorized to receive service of process. Accordingly, service was proper, and the motion to dismiss for defective service of process will be denied.

### B. *Failure to Join Indispensable Party*

Welgrow claims that the action should be dismissed, pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure, for failure to join Grisar as an indispensable party.

■ Rule 19 of the Federal Rules of Civil Procedure provides for compulsory joinder of parties who are needed for just adjudication. On a motion to dismiss for failure to join an indispensable party, a court's analysis proceeds in two steps. *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121,

1123 (2d Cir.1990). First, the court must determine whether the absent party is a "party to be joined if feasible" under Rule 19(a). Only if the court determines that the party is to be joined if feasible but cannot be joined, must the court proceed determine whether, under Rule 19(b), the action should, "in equity and good conscience," be dismissed. Fed.R.Civ.P. 19.

Rule 19(a) sets forth the standards for determining when a party should be joined if feasible:

> A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede that person's ability to protect that interest or (ii) leave any of the parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

 Grisar's absence will not prevent complete relief from being accorded between the parties in the present action. Evergreen has chosen this forum for resolving this dispute and thus believes it can be accorded adequate relief here. Welgrow will be able to litigate the action fully in this forum, and will not be precluded from proving any of its legitimate defenses. Although Grisar's presence might make it easier for Welgrow to press its theory that an agreement among Grisar, Evergreen and Welgrow excuses any obligation on Welgrow's part to pay detention charges, these potential difficulties of proof do not prevent complete relief from being accorded. *Cf. S & S Machinery Corp. v. General Motors Corp.*, No. 93 Civ. 3237, 1994 WL 529867, *5 (S.D.N.Y. Sept. 28, 1994)

(where discovery can uncover relationship among parties and non-parties, non-parties are not necessary).

Grisar will not be unable to protect its interest unless joined. Any finding in this Court that Welgrow is not liable because Grisar is solely liable for the detention charges will not constitute *res judicata* against Grisar, since Grisar is not a party to this case. This is not a case in which such a judgment, while not legally binding, might practically impair Grisar's interests. *Compare Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 398 (5th Cir.1971) (injunction ordering defendant to issue common stock to plaintiff would practically impair absent party's alleged interest in the same stock).

 Finally, there is no risk of multiple liability or "inconsistent obligations." If this litigation proceeds concurrently with the litigation in Antwerp, there is a possibility that the two tribunals could come to opposite conclusions concerning Welgrow's liability for the disputed detention charges. However, Rule 19 does not protect a party from logically inconsistent results, only inconsistent obligations. *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D.Ohio 1984). Here, an inconsistency in holdings will not impose multiple damage awards or inconsistent equitable obligations, such as would result from the issuance of conflicting injunctions.[2] Two different results regarding liability will result in only one obligation, an obligation to pay damages, and there will be no other obligation with which that obligation will conflict.

 The possibility of different damage awards is not sufficiently "inconsistent" to invoke the protection of the Rule. If both tribunals find Welgrow liable, Evergreen will be precluded from making a double recovery.

---

**2.** Even if the risk of inconsistency in liability determinations rendered Grisar a party to be joined if feasible, Grisar would not be indispensable under Rule 19(b). The possibility that Welgrow will be found not liable here, but will be obligated to indemnify Grisar in Belgium, does not make Grisar an indispensable party. *See Barclays Bank PLC v. Vena*, No. 87 Civ. 3621, 1988 WL 96012, *1 (S.D.N.Y. Aug. 30, 1988) (non-party "necessary" because defendants

might prevail in federal action, but be compelled to indemnify non-party if non-party found liable in state action; however, fact that individuals might be indemnitors does not require that they all be parties to the action). *See also Pasco International Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir.1980) (possibility that non-party may being subsequent indemnification action against defendant does not make that non-party indispensable).

*See St. Clair v. Eastern Air Lines, Inc.*, 302 F.2d 477, 479 (2d Cir.1962). Although Welgrow might be faced with different damage awards, the obligations in both cases—to pay damages—will be completely consistent. Welgrow will not have to pay more than the amount of the larger judgment. *Id.* at 480.

Because Grisar is not a party to be joined if feasible under Rule 19(a), it is unnecessary to reach the question of whether the action should be dismissed in Grisar's absence.

### C. *Abstention Based on Pending Belgian Action*

Welgrow also urges this Court to dismiss Evergreen's action because of the pendency of the similar action in the Antwerp Court.

A court has inherent power to dismiss or stay an action in favor of foreign litigation presenting the same claims and issues. *In re Houbigant*, 914 F.Supp. 997, 1003 (S.D.N.Y.1996); *Continental Time Corp. v. Swiss Credit Bank*, 543 F.Supp. 408, 410 (S.D.N.Y.1982) (citing *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). The relevant factors in determining whether to grant such a stay or dismissal include: the adequacy of relief available in the alternative forum; the promotion of judicial efficiency; the identity of the parties and issues in the actions; the convenience of the parties, counsel and witnesses; the possibility of prejudice to any of the parties; and the temporal sequence of the actions. *Continental*, 543 F.Supp. at 410.

However, federal courts are reluctant to decline jurisdiction solely on the basis of concurrent proceedings in another jurisdiction. "Parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously." *China Trade and Development v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir.1987) (*quoting Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 926–27 (D.C.Cir.1984)) (internal quotation marks omitted). *See also Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976) (federal court will abstain only in "exceptional" circumstances); *Moses H. Cone Memorial Hosp.*, 460 U.S. 1, 14–16, 19, 103 S.Ct. 927, 936–37, 938–39, 74 L.Ed.2d 765 (1983) (same).

The risk of inadequate relief in Belgium and the attendant prejudice to Evergreen preclude dismissal of the action at this juncture. Evergreen cannot be placed in the position of having to choose to proceed against only one of two parties, only one of whom may be liable for its injury. Dismissal could put Evergreen to precisely this choice, since it is not clear that Welgrow and Grisar can be brought together in the same forum.

In *Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*, 770 F.Supp. 880, 884–885 (S.D.N.Y.1991), the court dismissed a contract action on the grounds that the plaintiff had brought a similar action in Ireland involving the same contract against the wholly-owned subsidiary of the defendant in the New York action. However, the *Caspian* court justified dismissal primarily on the grounds that the defendant before it had consented to jurisdiction in the Irish court. 770 F.Supp. at 884 ("Most importantly, [defendant] has agreed to submit to the jurisdiction of the Irish court and to be bound by any determination by that court."). Here, Welgrow has not yet answered the third-party complaint in Belgium or submitted to the jurisdiction of the Antwerp Court.

Moreover, while it is true that judicial economy would be served by consolidating litigation among the interested parties before a single tribunal, it is not clear that, in this case, dismissal would achieve that end. As discussed above, Welgrow may not be subject to the jurisdiction of the Antwerp Court. If Welgrow is dismissed from the Belgian actions and Evergreen prevails against Grisar in Belgium, Grisar may very well bring a second action for indemnification in the United States.

Thus, although the Antwerp actions were filed first and involve legal issues and parties similar to those raised here, Evergreen's legitimate interest in assuring that it has an adequate forum in which to proceed against Welgrow counsels against dismissal at this time. However, should Welgrow submit to the jurisdiction of the Antwerp tribunal,

leave is hereby granted to Welgrow to apply again for a dismissal or stay in favor of the Antwerp action.

## II. *Summary Judgment*

■ The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555. A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991). However, "all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983).

■ Summary judgment is inappropriate at this juncture. Issues of fact remain with regard to the existence and enforceability of an agreement among Evergreen, Welgrow and Grisar to excuse Welgrow from liability for detention charges and impose such liability on Grisar.

■ Evergreen advances several arguments for its contention that there is no genuine issue of fact as to the existence and extent of Welgrow's liability under the contract. First, they contend that, even if there was an agreement among the parties, because the alleged modification was not filed with the Federal Maritime Commission, as required by federal regulations, the modification would be unenforceable as a matter of law. However, the purpose of the filing requirements is to permit the FMC to monitor rates being charged to shippers and to ensure that shippers are aware of, and able to take advantage of, contract rates made available by a carrier to similarly-situated shippers. *See* 46 CFR §§ 514.7(f), 514.7(g)(2)(i). There is no indication in the regulations themselves, and the Court has found no authority holding, that the failure to file a modification with the FMC renders the modification unenforceable as a matter of law. Indeed, it would be incongruous to use regulations designed to protect shippers to deprive a shipper of the benefit of a modified contract.

■ Evergreen next argues that the Contract's integration clause renders any alleged modification unenforceable. First, they contend that the clause's requirement that modifications be in writing precludes evidence of an oral modification. However, as Evergreen itself acknowledges, there is an exception under New York law when there is partial performance of the modification that is traceable to the alleged modification. *See Rose v. Spa Realty Associates,* 42 N.Y.2d 338, 343, 366 N.E.2d 1279, 397 N.Y.S.2d 922 (1977) (part performance of alleged oral modification renders modification enforceable; moreover, contract prohibition on oral modification can itself be waived orally); *Grandonico v. Consortium Communications International, Inc.,* 566 F.Supp. 1288, 1291 (S.D.N.Y.1983). Here, there are sufficient facts to support a finding that Grisar had partially performed a modification of the Contract that made it liable for detention charges. Grisar made payments to Evergreen for detention charges. Such payments clearly constitute part performance of the alleged modification. Moreover, several additional facts buttress the conclusion that Grisar's part performance is traceable to a modification: Evergreen's bills of lading named Grisar as a responsible party, the invoices for detention charges were issued solely to Grisar, Grisar reimbursed Welgrow

for payments it made on detention charges, and a number of Grisar's communications to Evergreen acknowledge its obligation to return containers to Evergreen and pay withheld detention charges.

 Evergreen also contends that some of the evidence advanced by Welgrow to create an issue of fact as to contractual liability for the detention charges is inadmissible parol evidence precluded by the Contract's integration clause. Evergreen argues that discussions prior to the formation of the original Contract and the November 9, 1992 amendment are not admissible to vary the express terms of the agreement. However, it need not be decided at this time whether such evidence would be admissible, since the evidence asserting the formation of the modification and of Grisar's part performance of the alleged modification raises a sufficient factual dispute to preclude summary judgment.[3]

Finally, Evergreen contends that there is no consideration for the purported modification. However, the extinguishment of the parties' prior obligations constitutes sufficient consideration for the substituted agreement among new parties. *Town & Country Linoleum & Carpet v. Welch*, 56 A.D.2d 708, 709, 392 N.Y.S.2d 517, 519 (4th Dept.1977). Evergreen could have bargained for the substitution because of Grisar's proximity to Evergreen's European ports and superior ability to track the movement of containers bound for Eastern Europe. Even if there is no valid legal consideration for the alleged modification, the doctrine of promissory estoppel might apply to make the modification enforceable. *See Kasper v. Roberts*, 119 Misc.2d 829, 832, 464 N.Y.S.2d 642, 645 (N.Y.City Civ.Ct.1983) (consideration *or* consideration substitute required for novation). A fact-finder might conclude that Welgrow reasonably relied upon the modification to its detriment.

Accordingly, an issue of fact remains with regard to the validity of the alleged modification. Therefor, the motion for summary judgment will be denied.

### Conclusion

Any arguments advanced by a party on which the Court has not commented have been considered by the Court and rejected as irrelevant or meritless.

For the reasons discussed above, Evergreen's motion for summary judgment is hereby denied. Welgrow's motion to dismiss is hereby denied, with leave to renew upon a showing that it has submitted to the jurisdiction of the Antwerp Court. The motions to strike are summarily denied, but this denial does not constitute a ruling on the admissibility of the challenged evidence at trial.

It is so ordered.

---

**3.** While this Court declines to decide the issue at this time, it should be noted that where a term is ambiguous, prior oral or written evidence may be admissible to clarify the meaning of the term. *See Tom Doherty Assocs. v. Saban Entertainment*, 60 F.3d 27, 36 (2d Cir.1955); *Pierson v. Willets Point Contracting Co.*, 899 F.Supp. 1033, 1042 (E.D.N.Y.1995); *Stage Club Corp. v. West Realty Co.*, 212 A.D.2d 458, 459, 622 N.Y.S.2d 948 (1st Dept.1995). Here, it is at least arguable that the original Contract's silence on the amount of demurrage chargeable creates an ambiguity that would permit parol evidence on the intentions of the parties with regard to demurrage.